1 | PILLSBURY WINTHROP SHAW PITTMAN LLP
MICHAEL CHIBIB, P.C. (admitted *pro hac vice*)
2 | michael.chibib@pillsburylaw.com
401 Congress Ave., Suite 1700
3 | Austin, TX 78701-3797
Telephone:  512.580.9609
4 | Facsimile:   512.580.9601

5 | PILLSBURY WINTHROP SHAW PITTMAN LLP
RICHARD H. ZAITLEN (SBN 63283)
6 | richard.zaitlen@pillsburylaw.com
JEFFREY D. WEXLER (SBN 132256)
7 | jeffrey.wexler@pillsburylaw.com
LORI LEVINE (SBN 299227)
8 | lori.levine@pillsburylaw.com
725 South Figueroa Street, Suite 2800
9 | Los Angeles, CA 90017-5406
Telephone:  213.488.7100
10 | Facsimile:   213.629.1033

11 | Attorneys for Plaintiff and Counterdefendant UM
CORPORATION and Counterdefendants GOLDEN
12 | MEDIA GROUP, INC. and TIGA
ENTERTAINMENT COMPANY, LTD.

13 |

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

16 | WESTERN DIVISION

17 |

18 | UM CORPORATION, a Japanese corporation,

19 | Plaintiff,

20 | v.

21 | TSUBURAYA PRODUCTIONS CO., LTD., a Japanese corporation,

22 | Defendant.

23 |

24 |

25 |

26 | AND RELATED CROSS-CLAIMS

27 |

28 |

Case No. 2:15-cv-03764-AB (AJWx)

**PLAINTIFF AND COUNTERDEFENDANT UM CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS [Fed. R. Civ. P. 12(c)] OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [Fed. R. Civ. P. 56]**

Date:                September 12, 2016
Time:                10:00 a.m.
Location:          Courtroom 4

Motion Hrng. Cutoff:  January 9, 2017
Pretrial Conf.:            March 27, 2017
Trial:                        April 18, 2017

4837-6557-8033.v6

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................3

    A.    Procedural Background and the Parties' Allegations..........................3

    B.    Prior Lawsuits...........................................................................5

        1.    The First Japanese Lawsuit. ....................................................5

        2.    The Thai Lawsuit. .................................................................6

        3.    The Second Japanese Lawsuit...................................................6

        4.    The Chinese Lawsuit..............................................................8

    C.    Purported Termination of the 1976 Agreement. ...............................9

LEGAL STANDARD ............................................................................9

LEGAL ARGUMENT ..........................................................................11

I.    UNDER THE LAST-IN-TIME RULE, THE 2013 CHINESE JUDGMENT AND/OR THE 2010 JAPANESE JUDGMENT PRECLUDE TPC'S CLAIM THAT THE 1976 AGREEMENT IS A FORGERY................................................................................11

    A.    Under the Doctrine of International Comity, the Chinese and Japanese Courts' Judgments as to the Lack of Forgery are Entitled to Preclusive Effect.................................................11

    B.    Under the Last-in-Time Rule, the 2013 Chinese Judgment and/or the 2010 Japanese Judgment as to the Lack of Forgery are Entitled to Preclusive Effect Vis-à-Vis the 2007 Thai Judgment. ..................................................................15

    C.    Under the Doctrines of Claim and Issue Preclusion, the Chinese and Japanese Judgments Bar TPC from Relitigating Its Claims that the 1976 Agreement is a Forgery or Invalid. ...........19

    D.    The Thai Judgment is Not Entitled to Preclusive Effect. ...................22

II.    TPC HAS NO RIGHT TO TERMINATE THE 1976 AGREEMENT..........................................................................23

CONCLUSION ...................................................................................25

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alfadda v. Fenn,*
966 F. Supp. 1317 (S.D.N.Y. 1997) ...............................................................19

*Americana Fabrics, Inc. v. L & L Textiles, Inc.,*
754 F.2d 1524 (9th Cir. 1985) ....................................... 15, 16, 17, 18

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...............................................................................11

*Applied Medical Resources Corp. v. U.S. Surgical Corp.,*
352 F. Supp. 2d 1119 (C.D. Cal. 2005) .........................................22

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994)..................................................................10

*British Midland Airways Ltd. v. Int'l Travel, Inc.,*
497 F.2d 869 (9th Cir. 1974) ...............................................................13

*Chavez v. United States,*
683 F.3d 1102 (9th Cir. 2012) ............................................................. 9

*Clark v. Yosemite Community College Dist.,*
785 F.2d 781 (9th Cir. 1986) ...............................................................11

*Cunard S.S. Co. v. Salen Reefer Serv. AB,*
773 F.2d 452 (2d Cir. 1985).................................................................12

*Dworkin v. Hustler Magazine Inc.,*
867 F.2d 1188 (9th Cir. 1989) ............................................................. 9

*Fairchild, Arabatzis & Smith, Inc. v. Prometco Co.,*
470 F. Supp. 610 (S.D.N.Y. 1979) .....................................................14

*Galbraith v. County of Santa Clara,*
307 F.3d 1119 (9th Cir. 2002) ............................................................10

*Heliotrope Gen., Inc. v. Ford Motor Co.,*
189 F.3d 971 (9th Cir. 1999) ...............................................................10

*Hilton v. Guyot,*
159 U.S. 113 (1895)........................................................................12, 13

*Ibanez v. U.S. Bank Nat'l Ass'n,*
856 F. Supp. 2d 273 (D. Mass. 2012)................................................ 9

*In re Reynoso,*
477 F.3d 1117 (9th Cir. 2007) .......................................................20, 21

4837-6557-8033.v6

# TABLE OF AUTHORITIES
## (cont'd)

**Page**

*In re Simon*,
  153 F.3d 991 (9th Cir. 1998)......................................................12

*In-Tech Mktg. Inc. v. Hasbro, Inc.*,
  719 F. Supp. 312 (D.N.J. 1989) ................................................14

*International Nutrition Co. v. Horphag Research Ltd.*,
  257 F.3d 1324 (Fed. Cir. 2001)..................................................12

*Kamilche Co. v. United States*,
  53 F.3d 1059 (9th Cir. 1995),
  *amended*, 75 F.3d 1391 (9th Cir. 1996)....................................22

*Koehler v. Bank of Bermuda Ltd.*,
  2004 WL 444101 (S.D.N.Y. Mar. 10, 2014) ............................17

*Loucks ex rel. Loucks v. Standard Oil Co. of N.Y.*,
  224 N.Y. 99, 120 N.E. 198 (1918) ....................................13, 14

*Lucido v. Superior Court*,
  51 Cal. 3d 335 (1990) ..............................................................21

*Montana v. United States*,
  440 U.S. 147 (1979)..................................................................20

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) ............................................12, 15

*Neilson v. Union Bank of Cal.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...................................10

*No. 84 Employer – Teamster Joint Council Pension Trust Fund v. America
  West Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ....................................................10

*Ohno v. Yasuma*,
  723 F.3d 984 (9th Cir. 2013)............................................13, 14

*Owens v. Kaiser Foundation Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001)..........................................10, 11

*Panama Processes, S.A. v. Cities Serv. Co.*,
  796 P.2d 276 (Okla. 1990) .......................................................13

*Pony Express Records v. Springsteen*,
  163 F. Supp. 2d 465 (D.N.J. 2001)....................................11, 14

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
  109 F.3d 850 (2d Cir. 1997)......................................................12

4837-6557-8033.v6

# TABLE OF AUTHORITIES
## (cont'd)

**Page**

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,*
   442 F.3d 741 (9th Cir. 2006) ...................................................................... 11, 20, 21

*Robi v. Five Platters, Inc.,*
   838 F.2d 318 (9th Cir. 1988) ........................................................... 15, 16, 17, 18

*Somportex Ltd. v. Phila. Chewing Gum Corp.,*
   453 F.2d 435 (3d Cir. 1971) ......................................................................... 12, 14

*Sprewell v. Golden State Warriors,*
   266 F.3d 979,
   *amended on other grounds,* 275 F.3d 1187 (9th Cir. 2001) ............................... 9

*St. Louis Baptist Temple, Inc. v. FDIC,*
   605 F.2d 1169 (10th Cir. 1979) .......................................................................... 10

*Taylor v. Sturgell,*
   553 U.S. 880 (2008) ............................................................................................. 20

*Treinies v. Sunshine Mining Co.,*
   308 U.S. 66 (1939) ............................................................................................... 15

*U.S. ex rel. Cafasso v. General Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ............................................................................. 9

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,*
   971 F.2d 244 (9th Cir. 1992) ........................................................................ 10, 11

*Valley Nat'l Bank of Arizona v. A.E. Rouse & Co.,*
   121 F.3d 1332 (9th Cir. 1997) ............................................................................ 15

*White v. City of Pasadena,*
   671 F.3d 918 (9th Cir. 2012) ....................................................................... 20, 21

*Wilson v. Marchington,*
   127 F.3d 805 (9th Cir. 1997) ...................................................................... 12, 13, 14

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,*
   433 F.3d 1199 (9th Cir. 2006) (en banc) .......................................................... 14

*Yamaha Corp. of Am. v. United States,*
   961 F.2d 245, 254 (D.C. Cir. 1992) ................................................................... 22

4837-6557-8033.v6

# TABLE OF AUTHORITIES
## (cont'd)

**Page**

## STATUTES

Civil Code of Japan
    Article 85 ..............................................................................24
    Article 540, Section 1 .........................................................25
    Article 593 ...........................................................................24
    Article 597 ...........................................................................24
    Article 597, Section 3 ....................................................9, 23
    Article 601 ...........................................................................24
    Article 617 ...........................................................................24
    Article 617, Section 1 ..............................................9, 23, 24

Civil Procedure Law of China
    Article 281 ......................................................................9, 17
    Article 282 ......................................................................9, 17

## RULES

Federal Rules of Civil Procedure
    Rule 12 ....................................................................2, 9, 10
    Rule 12(b)(6) ......................................................................... 9
    Rule 12(c) ........................................................................9, 10
    Rule 56(a) ............................................................................11

## MISCELLANEOUS

18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 4404 (1981) ............................................................17

18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 4404 (2002 & supp. 2015) ..............................15, 18

2 W. Schwarzer, A. Tashima & J. Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, § 9:321.1 (2016) ................................. 9

Restatement (Second) of Judgments (1982)
    Section 15 ............................................................................15
    Section 15 cmt. c.............................................................16, 17
    Section 15, cmt. n ...............................................................16
    Section 27, cmt. c................................................................22

Restatement (Third) of Foreign Relations Law (1987)
    Section 482, cmt. e..............................................................23

v

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This lawsuit arises out of the conflicting claims of plaintiff and counterdefendant UM Corporation ("UMC") and defendant and counterclaimant Tsuburaya Productions Co., Ltd. ("TPC") to ownership of intellectual property rights in several Japanese motion pictures based on the superhero Ultraman. UMC contends that under a 1976 agreement (the "1976 Agreement") between TPC and UMC's predecessor Sompote Saengduenchai ("Mr. Sompote"), UMC has an exclusive, perpetual license to all copyrights and trademarks in various Ultraman works in all countries outside of Japan. TPC alleges that the 1976 Agreement was forged and is therefore invalid, and that it has terminated that Agreement. The validity of the 1976 Agreement is the principal issue presented in this lawsuit; the Court's resolution of that issue may eliminate the need for much of the discovery anticipated in this case, including the review and production of thousands of foreign-language documents and numerous overseas depositions.

Over the past 15 years, TPC and Mr. Sompote and/or UMC have litigated TPC's claim that the 1976 Agreement is a forgery to final judgment through appeal in four lawsuits in three different countries. In three of those lawsuits – including the first decision and the two most recent decisions – the highest court to consider the issue held that the 1976 Agreement was not forged and is valid. Specifically, in a December 10, 2003 Judgment by the Tokyo Appellate Court, a September 30, 2010 Judgment by the Tokyo District Court, and a September 29, 2013 Civil Ruling by the Supreme People's Court of the People's Republic of China, courts in Japan and China rejected TPC's argument that the 1976 Agreement was forged. In a November 14, 2007 Judgment, the Thai Supreme Court accepted TPC's argument that the 1976 Agreement was forged.

This is now the *fifth* lawsuit in which TPC has sought to litigate the same forgery issue, relying on the same arguments and facts that it presented to the prior

4837-6557-8033.v6

1   tribunals.  Enough is enough.  By this motion, UMC asks the Court to apply *res*

2   *judicata* and/or issue preclusion to preclude TPC from yet again raising a claim

3   that has been squarely rejected by the highest courts to have heard that claim in

4   both Japan and, most recently, China.

5          Under the doctrine of international comity, courts in the United States may

6   afford preclusive effect to the judgments of foreign courts.  Under the last-in-time

7   doctrine, if two or more courts have rendered inconsistent judgments on the same

8   claim or issue, preclusive effect should generally be given to the last-in-time

9   judgment.  Here, TPC's claim of forgery was rejected by the two most recent

10  Judgments to have addressed that claim, those issued by the Chinese Supreme

11  People's Court on September 29, 2013 and the Tokyo District Court on September

12  30, 2010.  Accordingly, the Court should apply preclusive effect to the Chinese

13  and/or Japanese Judgments, and grant judgment on the pleadings or summary

14  judgment against TPC's affirmative defenses and counterclaims to the extent they

15  require proof that the 1976 Agreement was forged or is unenforceable (including

16  TPC's affirmative claims for relief based upon UMC's alleged infringement of

17  intellectual property rights transferred by TPC under that Agreement).

18         In July 10, 2014 letters, TPC purported to terminate the 1976 Agreement,

19  relying upon provisions of the Civil Code of Japan that apply to demands for the

20  return of "borrowed Things" and the termination of leases of land, buildings, and

21  tangible property.  Because those statutes do not authorize termination of an

22  intellectual property license, the Court should grant summary judgment against

23  TPC's defenses and claims that are based upon the alleged termination.[1]

24

25  [1] UMC has challenged TPC's claim that the 1976 Agreement has been terminated
    through a motion for summary judgment rather than a Rule 12 motion because
26  TPC's Counterclaims do not allege the basis for TPC's position that the 1976
    Agreement has been terminated, making it necessary to consider evidence extrinsic
27  to the Counterclaims to determine the basis for the alleged termination.  In
    challenging the claimed termination of the 1976 Agreement, UMC's motion relies
28  upon a purely legal issue, the interpretation of the Japanese statutes relied upon by
    TPC.

4837-6557-8033.v6

# BACKGROUND

## A.    Procedural Background and the Parties' Allegations.

On May 19, 2015, UMC filed its Complaint [Dkt. 1], naming TPC as the sole defendant and alleging claims for copyright infringement, breach of contract, intentional interference with contractual relations, and declaratory relief.  Dkt. 1 at 11-15, ¶¶ 33-56.  UMC's claims are predicated upon a March 4, 1976 Agreement (the "1976 Agreement") (subsequently assigned to UMC) in which TPC granted Mr. Sompote rights to Ultraman outside of Japan.  *Id.* at 4-5, ¶¶ 9-13.

On September 11, 2015, TPC filed its Answer, Affirmative Defenses and Counterclaims [Dkt. 19], naming UMC, Ultraman USA, Inc. ("Ultraman USA"), Mr. Sompote, Golden Media Group, Inc. ("GMG"), and TIGA Entertainment Company, Ltd. ("TIGA") as counterdefendants and alleging a First Counterclaim for Relief for copyright infringement and a Second Counterclaim for Relief for declaratory relief.  Dkt. 19 at 24-26, ¶¶ 46-54.

In its Answer, TPC asserted three affirmative defenses that are directed towards the validity of the 1976 Agreement: (1) the Third Affirmative Defense, which alleges that "[UMC's] claims are barred, in whole or in part, by the fact that [UMC's] claims are based on fraudulent documents and/or documents that were procured by fraud"; (2) the Tenth Affirmative Defense, which alleges that "[UMC's] claims are barred in whole or in part by the doctrines of *res judicata* and collateral estoppel"; and (3) the Eleventh Affirmative Defense, which alleges that "[UMC's] claims are barred because the contract pursuant to which [UMC] asserts rights and seeks relief has been terminated and/or is otherwise invalid under Japanese law."  *Id.* at 10.

TPC's Counterclaims are both predicated upon the contention that the 1976 Agreement is invalid or unenforceable and that TPC therefore owns rights to the works at issue.  The First Counterclaim for Copyright Infringement raises the claimed invalidity of the 1976 Agreement by alleging that "Counterdefendants

3

1   have infringed and are continuing to infringe the Copyrighted Works, including by

2   copying, distributing, publicly displaying and publicly performing the Ultraman

3   Library *without [TPC's] authorization*."[2]  *Id.* at 24, ¶ 48 (emphasis added).

4       The Second Counterclaim for Declaratory Relief squarely presents the issue

5   of the validity and enforceability of the 1976 Agreement: "[TPC] believes that it is

6   and remains the exclusive owner of any and all rights in the Copyrighted Works

7   and that Counterdefendants have no right to distribute, reproduce, display or create

8   derivative works from these works.  [TPC] is informed and believes, and thereupon

9   alleges, that Counterdefendants dispute all of this, and ***do so based on the 1976***

10  ***Document***."  *Id.* at 25, ¶ 53 (emphasis added).  Similarly, the declaratory relief

11  sought by TPC is directed towards the validity of the 1976 Agreement; TPC "seeks

12  a declaratory judgment that (1) [TPC] is the exclusive owner of any and all rights

13  in the Copyrighted Works, and Counterdefendants have no rights to distribute,

14  reproduce, display or create derivative works from these works; (2) ***the 1976***

15  ***Document is of no force or effect***; and (3) [TPC] has no obligations to

16  Counterdefendants."  *Id.* at 25-26, ¶ 54 (emphasis added).

17      In support of these counterclaims, TPC alleges on information and belief

18  that "Sompote and/or those affiliated with him falsified a document claiming to

19  have been dated in or about 1976 purporting to grant Sompote certain copyright

20  and/or trademark rights in certain works contained in the Ultraman Library as an

21  exclusive licensee in all territories except Japan (the '1976 Document')."  *Id.* at 20,

---

22  [2] The Counterclaims identify the copyrights as being for Ultraman—The

23  Adventure Begins, Ultraman—Towards the Future, "and all episodes in the series
    of Ultra Q, Ultraman, Ultra Seven, The Return of Ultraman, Ultraman Ace,

24  Ultraman Taro, and Jumborg Ace (applications for registration of which were filed
    in the United States Copyright Office on September 9 and 10, 2015, and remain

25  pending)."  Dkt. 19 at 19-20, ¶ 29.  The titles of the latter seven series match, with
    minor variations, the titles of the television shows identified in the 1976

26  Agreement: (1) ULTRAMAN 1 "ULTRA Q" (28 x 20 Min); (2) ULTRAMAN 2
    (39 x 30 Min); (3) ULTRAMAN SEVEN (50 x 30 Min); (4) RETURN

27  ULTRAMAN (51 x 30 Min); (5) ULTRAMAN ACE (51 x 30 Min); (6)
    ULTRAMAN TARO (54 x 30 Min); and (7) JAMBORG ACE (50 x 30 Min).  *See*

28  1976 Agreement (Ex. A to Declaration of Jeffrey D. Wexler).

¶ 32.  TPC further alleges that UMC is relying upon the 1976 Agreement as a justification for its use of the Ultraman works at issue and its contention that TPC is infringing UMC's rights in those works.  *See id.* at 12, 20-21, ¶¶ 3, 33.

TPC alleges that the Thai Supreme Court rejected Mr. Sompote's claims based upon the 1976 Agreement and implies that other courts have also rejected such claims.[3]  *See id.* at 12, 20-21, ¶¶ 3, 33-35.  As discussed in detail below, however, in the three other cases where TPC raised its forgery claim, such claim was rejected by the highest courts to have considered the issue – the Tokyo Appellate Court (in 2003), the Tokyo District Court (in 2010, in a separate lawsuit), and the Chinese Supreme People's Court (in 2013).

On October 16, 2015, UMC filed its Answer and Affirmative Defenses [Dkt. 31].  As a Ninth Affirmative Defense, UMC alleges that "Defendants' counterclaims are barred in whole or in part by the doctrines of collateral estoppel, adjudicatory comity, and/or *res judicata*."[4]  Dkt. 31 at 10.

**B.    Prior Lawsuits.**

**1.    The First Japanese Lawsuit.**

In 1997, TPC filed a lawsuit against Mr. Sompote in the Tokyo District Court.  *See* Request for Judicial Notice ("RJN"), Ex. B, at 4-5 (September 30, 2010 Tokyo District Court Judgment describing prior lawsuit).  In a February 28, 2003

---

[3] *See* Dkt. 19 at 21, ¶ 33 ("Sompote and his affiliated entities have already tried—*and failed*—to use the 1976 Document to erase [TPC's] claims to the copyrights in the Ultraman Library *in other countries*") (emphasis added); *id.* at 21, ¶ 35 ("[d]espite these setbacks, and *despite losing his claims in foreign venues*, [TPC] is informed and believes, and thereupon alleges, that Sompote's baseless efforts to profit from [TPC's] creativity and erase [TPC's] copyrights have now reached American shores") (emphasis added).

[4] In their Answers filed on November 4, 2015, November 19, 2015, and February 22, 2015, respectively, Ultraman USA, GMG, and TIGA asserted similar affirmative defenses.  *See* Dkt. 35 at 3 (Ultraman USA's Eighth Affirmative Defense); Dkt. 43 at 11 (GMG's Ninth Affirmative Defense); Dkt. 59 at 9 (TIGA's Eighth Affirmative Defense).  TPC claims to have served the remaining counterdefendant, Mr. Sompote, on June 27, 2016, *see* Dkt. 68; Mr. Sompote has not yet appeared in this lawsuit, and TPC on July 21, 2016 requested the clerk to enter his default, *see* Dkt. 71.

4837-6557-8033.v6

1  Judgment, the Tokyo District Court held that the 1976 Agreement was genuine.

2  *See id.* at 5.  On December 10, 2003, the Tokyo Appellate Court agreed with the

3  Tokyo District Court as to the authenticity of the 1976 Agreement.  *See id.* at 5-6

4  On April 27, 2004, the Supreme Court of Japan declined to hear TPC's appeal.

5  *See id.* at 6.

6  **2.    The Thai Lawsuit.**

7  In 1997, TPC sued Tsuburaya Chaiyo Company Limited ("Chaiyo"), Mr.

8  Sompote, Perasit Saengduenchai ("Mr. Perasit"), and Book Athens Distribution

9  Company Limited in Thailand.  *See* Declaration of Jeffrey D. Wexler ("Wexler

10  Decl."), Ex. B, at 1, 3 (unofficial translation of November 14, 2007 Thai Supreme

11  Court Judgment).[5]  In an April 4, 2000 decision, the Thai Central Intellectual

12  Property and International Trade Court dismissed TPC's claim that the 1976

13  Agreement was forged.  *See id.* at 2, 13-16.  On November 14, 2007, the Thai

14  Supreme Court reversed, accepting TPC's claim that the 1976 Agreement was

15  forged.[6]  *See id.* at 31-40.

16  **3.    The Second Japanese Lawsuit.**

17  In 2009, Mr. Sompote filed a lawsuit against TPC in Tokyo District Court;

18  UMC intervened in that lawsuit.  *See* RJN, Ex. B, at 1.  On September 30, 2010,

19  the Tokyo District Court issued a Judgment in which it held that TPC could not

20  raise the forgery issue again because that issue had been resolved against TPC by

21  the Tokyo Appellate Court in 2003.  *See id.*, Ex. B.

22  The Tokyo District Court recognized that there had already been Judgments

23  by courts in three different countries with regard to, *inter alia*, the claim that the

24

---

25  [5] UMC has not sought judicial notice of the Thai Supreme Court's Judgment and does not vouch for the unofficial translation of that Judgment.  UMC is providing

26  that Judgment to the Court as background for the issues presented by this motion.

27  [6] The Thai Supreme Court's Judgment did not refer to the 2003 Judgments of the Tokyo District Court and the Tokyo Appellate Court, let alone address the issue

28  whether such Judgments should be given preclusive effect.  *See* Wexler Decl., Ex. B.

6

4837-6557-8033.v6

1   1976 Agreement was a forgery: (1) the 2003 Judgment by the Tokyo Appellate

2   Court holding that the 1976 Agreement was not a forgery; (2) the 2007 Judgment

3   by the Thai Supreme Court holding that the 1976 Agreement was a forgery; and

4   (3) the September 16, 2009 Judgment of the Guangzhou Intermediate People's

5   Court holding that the 1976 Agreement was a forgery.[7]  *See id.* at 4-7.  The Tokyo

6   District Court summarized the parties' briefing of the issue as to the effect of the

7   prior Judgments, *see id.* at 13-16, 34-35, then held that the 2003 Tokyo litigation

8   barred TPC from relitigating the issue of the validity of the 1976 Agreement:

> [Mr. Sompote], with [UMC], and [TPC] have been disputing over the validity of the contract and its binding effect (the result of this contract); [TPC's] claim was that the contract was a forged document, and therefore the contract was not binding, and also that there was no consensus from the company's board members in signing this contract.  However, by examinations of the evidences (A 4 and 6) and arguments, the court has acknowledged that (1) [TPC] filed the litigation against [Mr. Sompote] prior to this litigation in Tokyo, (2) [TPC] made the same main claim in the Tokyo litigation that the contract was a forged document and there was no consensus by the board (also, the claim of the contract being void was added during the appeal hearing), and (3) the Tokyo District Court and the High Court have verified that [Mr. Sompote] possesses the exclusive exploitation rights within the judgment text.  In their explanations, the court has stated that the contract was valid, according to evidences and depositions (B 16), and has binding effect.  Also regarding the effects of this contract, the actual contract itself is binding in principle even if the representative director disposed of significant assets without the decision of the board; therefore the decision that this contract is valid was made.  (4) The Tokyo Supreme Court dismissed [TPC's] appeal against the Tokyo High Court's decision; hence the judgment has become final.  [TPC] stated some facts, to disprove the validity of the contract, which are the results from signature analysis which indicated that the signature was not of Noboru, inconsistencies in the content of the contract, the fact about the exclusive exploitation rights already being given to the third party prior to the forming of the contract, and the fact that [Mr. Sompote] has never openly claimed his rights for the past 20 years.  However, those exact statements were given by [TPC] in the Tokyo litigation as well.
>
> ***Considering all of the facts described above, [TPC's] claims in the dispute for the validity of the contract and its binding effect are***

---

[7] As discussed below, on October 25, 2010, one month after the Tokyo District Court's Judgment, the Higher People's Court of Guangdong Province overruled the September 16, 2009 Judgment of the Guangzhou Intermediate People's Court and held that the 1976 Agreement was not a forgery.  *See* RJN, Ex. H, at 16-19, 21-22.

7

1    *merely a repeat of the Tokyo litigation. According to the general*
2    *practices of litigations, it is not permitted to make same claims to*
     *turnover the previously litigation's judgment*. [Citations omitted.]

3    Therefore, based on evidences and arguments (A 2, A 4, A 6 and B
4    16) made by the parties, *the court finds that the forming of the*
     *contract was legally binding.*

5    *Id.* at 42-44 (emphasis added). The Tokyo District Court explained that it was

6    declining to follow the Thai Supreme Court's Judgment as contrary to the prior

7    Japanese Judgments. *See id.* at 53-54.

8         On July 27, 2011, the Japanese Intellectual Property High Court filed a

9    Judgment ruling on the appeals of TPC and UMC without addressing TPC's claim

10   that the 1976 Agreement was forged (suggesting that TPC did not raise that

11   argument on appeal). *See* RJN, Ex. D. On April 26, 2012, the Supreme Court of

12   Japan declined to hear TPC's appeal from the Japanese Intellectual Property High

13   Court's Judgment. *See* RJN, Ex. F.

14                    **4.    The Chinese Lawsuit.**

15        On September 30, 2005, Mr. Sompote and Chaiyo filed suit in the

16   Guangzhou Intermediate People's Court against TPC, Shanghai Tsuburaya Co.,

17   Ltd., Guangzhou Book Acquisition Center Co., Ltd., and Shanghai Audiovisual

18   Press. *See* RJN, Ex. H, at 5. In a September 16, 2009 Judgment, the Guangzhou

19   Intermediate People's Court held that the 1976 Agreement was invalid and that Mr.

20   Sompote and Chaiyo did not own rights to the copyrighted materials. *See id.* at 11-

21   13. In an October 25, 2010 Judgment, the Higher People's Court of Guangdong

22   Province reversed the lower court's ruling, holding that the 1976 Agreement was

23   indeed authentic. *See id.* at 16-19, 21-22.

24        On September 29, 2013, the Chinese Supreme People's Court upheld the

25   decision of the Higher People's Court of Guangdong Province. *See id.* at 22-26.

26   The Chinese Supreme People's Court affirmed the lower court's finding that TPC

27   had failed to provide evidence to prove the claim that the 1976 Agreement was

28   faked. *Id.* at 23-25. The Chinese Supreme People's Court rejected TPC's

8

1    argument that it should afford preclusive effect to the 2007 Judgment of the

2    Supreme Court of Thailand on the ground that TPC had failed to apply to the

3    Chinese Intermediate People's Court for recognition of that Judgment, as it was

4    required to do under Articles 281 and 282 of the Civil Procedure Law of China for

5    the Chinese courts to consider that Judgment. *See id.* at 7-9, 25.

6              **C.       Purported Termination of the 1976 Agreement.**

7              On July 10, 2014, Shinichi Ooka of TPC sent a letter to Mr. Perasit stating

8    that TPC "hereby notif[ies] both you and UM[C] that [TPC] is effectively

9    terminating the 1976 Agreement by service of this letter under Article 597, Section

10   3 of the Civil Code of Japan (if there is any compensation for such rights, under

11   Article 617, Section 1 thereof) as the 1976 License Agreement has an indefinite

12   term." Wexler Decl., Ex. C. Mr. Ooka also sent a letter to Mr. Sompote

13   purporting to terminate the 1976 Agreement. *See id.*, Ex. D.

14                              **LEGAL STANDARD**

15             **Judgment on the Pleadings.** "Rule 12(c) is 'functionally identical' to Rule

16   12(b)(6)." *U.S. ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047,

17   1054 n. 4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d

18   1188, 1192 (9th Cir. 1989)). Thus, "[a]nalysis under Rule 12(c) is 'substantially

19   identical' to analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d

20   1102, 1108 (9th Cir. 2012). However, "'[a] Rule 12(c) motion differs from a Rule

21   12(b)(6) motion in that it implicates the pleadings as a whole.'" 2 W. Schwarzer,

22   A. Tashima & J. Wagstaffe, *California Practice Guide: Federal Civil Procedure*

23   *Before Trial*, § 9:321.1, at 9-122 (2016) (quoting *Ibanez v. U.S. Bank Nat'l Ass'n*,

24   856 F. Supp. 2d 273, 275 (D. Mass. 2012)).

25             Documents attached to the complaint and incorporated by reference are

26   treated as part of the complaint for purposes of a Rule 12(b)(6) motion. *See*

27   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended on other grounds*,

28   275 F.3d 1187 (9th Cir. 2001). Similarly, in ruling on a Rule 12 motion to dismiss,

4837-6557-8033.v6

the Court may consider documents referenced in the complaint, even though they are not attached thereto. *See*, *e.g.*, *No. 84 Employer – Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 925 n. 2 (9th Cir. 2003) ("[u]nder the incorporation by reference doctrine, we also consider documents submitted by Defendants that were referenced in the complaint and whose authenticity has not been questioned"); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (same), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Here, the 1976 Agreement may properly be considered on a Rule 12 motion because it is referenced repeatedly in TPC's Answer/Counterclaims, and there is no dispute that the 1976 Agreement is an authentic copy of the document that TPC contends to be a forgery.[8] *See* Dkt. 19 at 10 (Third & Eleventh Affirmative Defenses); *id.* at 12, 20-21, 25, ¶¶ 3, 32-35, 53; *id.* at 26, prayer, ¶ 3.

Furthermore, extrinsic evidence that is subject to judicial notice may be properly considered on a Rule 12(c) motion. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999). "Court orders and filings are the type of documents that are properly noticed under [Rule 201(b)]." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003). Thus, courts "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

A party may bring a Rule 12(c) motion for judgment on the pleadings based upon *res judicata*. *See Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d

---

[8] Because TPC alleges that the 1976 Agreement is forged, UMC's request that the Court consider that Agreement is contingent on the Court first finding that the 2013 Chinese Judgment and/or the 2010 Japanese Judgment bar TPC from relitigating the validity of that Agreement.

4837-6557-8033.v6

708, 713-15 (9th Cir. 2001); *Clark v. Yosemite Community College Dist.*, 785 F.2d 781, 784 (9th Cir. 1986).  When determining whether the results of prior litigation preclude a claim, the Court may take judicial notice of materials from the prior litigation.  *See*, *e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 & n. 6 (9th Cir. 2006) (taking judicial notice of briefs and hearing transcript to identify the issues that had been litigated and settled in prior litigation, for purposes of issue preclusion); *United States ex rel. Robinson Rancheria Citizens Council*, 971 F.2d at 248 (taking judicial notice of state court judgment in affirming dismissal of complaint based on *res judicata*).

**Summary Judgment.**  Summary judgment is required "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The non-movant must identify specific facts that show a genuine issue of material fact for trial, *i.e.*, that the facts could allow a reasonable jury to return a verdict for the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## LEGAL ARGUMENT

I. **UNDER THE LAST-IN-TIME RULE, THE 2013 CHINESE JUDGMENT AND/OR THE 2010 JAPANESE JUDGMENT PRECLUDE TPC'S CLAIM THAT THE 1976 AGREEMENT IS A FORGERY.**

   A. **Under the Doctrine of International Comity, the Chinese and Japanese Courts' Judgments as to the Lack of Forgery are Entitled to Preclusive Effect.**

Although the Full Faith and Credit Clause of the United States Constitution does not apply to judgments of foreign courts, courts in the United States afford preclusive effect to the judgments of foreign courts by relying upon the doctrine of international comity.  *See*, *e.g.*, *Pony Express Records v. Springsteen*, 163 F. Supp. 2d 465, 471-72 (D.N.J. 2001).

International comity """"is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due

11

regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."'" *Mujica v. AirScan Inc.*, 771 F.3d 580, 597-98 (9th Cir. 2014) (quoting *In re Simon*, 153 F.3d 991, 998 (9th Cir. 1998) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895))). "Comity is a 'rule of "practice, convenience, and expediency" rather than of law' that courts have embraced 'to promote cooperation and reciprocity with foreign lands.'" *Id.* at 598 (quoting *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 854 (2d Cir. 1997) (quoting *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971))).

When applying comity to preclude a party from relitigating claims already decided in another country, a court must determine that doing so would be fair. "As a general rule, comity may be granted where 'it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated.'" *International Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1329 (Fed. Cir. 2001) (quoting *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 457 (2d Cir. 1985)). Indeed, "as long as the foreign court abides by 'fundamental standards of procedural fairness,' granting comity is appropriate." *Id.* (quoting *Cunard S.S. Co.*, 773 F.2d at 457). *See Hilton*, 159 U.S. at 159-60 (deference to a foreign judgment on comity principles is generally appropriate where the foreign court had personal and subject-matter jurisdiction, the parties were informed of and had the opportunity to defend against the claim, and there is a record; in such case, "the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court").[9]

---

[9] Although the *Hilton* Court identified reciprocity – the willingness of the foreign court to apply preclusive effect to the judgment of a U.S. court – as a requirement for U.S. courts to afford preclusive effect to the foreign court's judgment, *see Hilton*, 159 U.S. at 210, later cases have abandoned the reciprocity requirement, *see, e.g., Wilson v. Marchington*, 127 F.3d 805, 811-12 (9th Cir. 1997).

4837-6557-8033.v6

The prior proceedings in Japan and China were fundamentally fair. The 1976 Agreement was executed in Japan, and the parties to the 1976 Agreement – TPC and Mr. Sompote – were from Japan and Thailand, respectively (and Mr. Sompote's successor UMC is from Japan). *See* Dkt. 19, ¶¶ 5, 6, 8. Furthermore, TPC and Mr. Sompote (and UMC) appeared in the prior proceedings and litigated the cases to finality, as evidenced by the Judgments from those proceedings. Thus, there can be no dispute that the courts in China and Japan had personal and subject matter jurisdiction, or that the parties had the opportunity to defend the other's claims.

Furthermore, applying the doctrine of comity is just because there is no evidence that the Chinese or Japanese proceedings were procedurally unfair. "'It has long been the law that unless a foreign country's judgments are the result of outrageous departures from our own notions of 'civilized jurisprudence,' comity should not be refused.'" *Ohno v. Yasuma*, 723 F.3d 984, 1003 (9th Cir. 2013) (quoting *British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974) (quoting *Hilton*, 159 U.S. at 205)). "'Foreign-law notions are not per se disharmonious with due process by reason of their divergence from the common-law notions of procedure.'" *Wilson v. Marchington*, 127 F.3d 805, 811-12 (9th Cir. 1997) (quoting *Panama Processes, S.A. v. Cities Serv. Co.*, 796 P.2d 276, 286 n. 36 (Okla. 1990)). Of course, as with any system of jurisprudence, there are differences between the law applied by courts in China and Japan and that applied by American courts. There is, however, no basis for contending that such differences are so extreme as to constitute "outrageous departures" from "civilized jurisprudence." *Ohno*, 723 F.3d at 1003.

Importantly, "[f]oreign judgments are not to be 'tried afresh' in U.S. courts, applying domestic concepts." *Id.* (citing *Hilton*, 159 U.S. at 202-03). "'We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.'" *Id.* (quoting *Loucks ex rel. Loucks v. Standard Oil Co.*

*of N.Y.*, 224 N.Y. 99, 111, 120 N.E. 198 (1918) (Cardozo, J.)).  To the contrary, "simple inconsistency between American state or federal law and foreign law . . . does not render a foreign judgment unenforceable by reason of repugnancy." *Ohno*, 723 F.3d at 1003 (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1215 (9th Cir. 2006) (en banc) (per curiam) (plurality opinion)).  Thus, "[i]f American law recognizes generally parallel causes of action, the foreign cause of action cannot be said to be repugnant to American public policy." *Id.* at 1005 (footnote omitted).  Here, the issues ruled on by the courts in China and Japan – *i.e.*, claims of copyright infringement and breach of contract and the defense of unenforceability of the 1976 Agreement due to alleged forgery – are the same claims asserted by the parties to this action; it is therefore beyond dispute that American law recognizes causes of action that are generally parallel to those considered and decided by the Chinese and Japanese courts.

United States courts have routinely barred relitigation of contractual issues properly decided by a foreign court.  *See Pony Express Records*, 163 F. Supp. 2d at 473 (holding that a British court's judgment on a claim that a contract transferred copyrights estopped the plaintiff from arguing to the contrary to support a claim of copyright infringement); *In-Tech Mktg. Inc. v. Hasbro, Inc.*, 719 F. Supp. 312, 317 (D.N.J. 1989) (applying principles of comity and collateral estoppel to prevent plaintiffs from relitigating a Dutch court's ruling on the issue whether a patent assignment had been dissolved); *Fairchild, Arabatzis & Smith, Inc. v. Prometco Co.*, 470 F. Supp. 610, 617 (S.D.N.Y. 1979) (applying res judicata to a British court's finding of a valid and binding contract, free from fraud).

Courts must also ensure that applying comity principles would not be prejudicial to the interests of the United States.  *See Wilson*, 127 F.3d at 809 ("[a]s a general policy, '[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect'") (quoting *Somportex Ltd.*, 453 F.2d at 440).  Here, accepting the 2013 Judgment of

14

the Chinese Supreme People's Court or the 2010 Judgment of the Tokyo District Court would not be contrary or prejudicial to the interests of the United States. The 1976 Agreement has no special nexus to the United States; on its face, it conveys rights in every country in the world other than Japan.  The United States' interests in the 1976 Agreement do not so far outweigh the interests of China and Japan in that Agreement as to require the Court to reconsider the prior judgments by courts in those countries.  In fact, the application of comity in this instance would serve the interests of the United States by "promot[ing] cooperation and reciprocity with foreign lands," *Mujica*, 771 F.3d at 598, and would also further the interests of judicial economy and finality in litigation.

**B.     Under the Last-in-Time Rule, the 2013 Chinese Judgment and/or the 2010 Japanese Judgment as to the Lack of Forgery are Entitled to Preclusive Effect Vis-à-Vis the 2007 Thai Judgment.**

Under the last-in-time rule, "[i]f two or more courts render inconsistent judgments on the same claim or issue, a subsequent court is normally bound to follow the most recent determination that satisfies the requirements of *res judicata*."  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).  *See, e.g.*, *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 74-78 (1939) (holding that conclusive effect must be given to the last in time of two inconsistent judgments); *Valley Nat'l Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997) ("[w]hen a court is faced with inconsistent judgments, 'it should give *res judicata* effect to the *last* previous judgment entered'") (quoting *Robi*, 838 F.2d at 328); *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529-30 (9th Cir. 1985) (same); Restatement (Second) of Judgments § 15 (1982) ("[w]hen in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata").  *See generally* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction.2d*, § 4404, at 60-75 (2002 & supp. 2015).

As the Ninth Circuit explained in *Americana Fabrics, Inc.*:

4837-6557-8033.v6

> When the same claim or issue is litigated in two courts, the second court to reach judgment should give *res judicata* effect to the judgment of the first, regardless of the order in which the two actions were filed. . . .   Sometimes, however, the second court does not give preclusive effect to the judgment of the first court.  This can occur when *res judicata* is not asserted in the second court, or when the second court decides, rightly or wrongly, that the doctrine does not apply.  Should the claim or issue then come before a third court, as it did before the Central District in this case, that court is faced with conflicting judgments from the first two courts.  The governing rule to be applied is quite clear.  ***The third court should give*** **res judicata** ***effect to the last previous judgment entered.***

*Americana Fabrics, Inc.*, 754 F.2d at 1529-30 (emphasis added).  *See id.* at 1530 n. 2 ("[t]he rule is equally applicable when there are three or more prior inconsistent proceedings").

"[T]he last in time rule is supported by the rationale that it '"end[s] the chain of relitigation . . . by stopping it where it [stands]" after entry of the [most recent] court's judgment, and thereby discourages relitigation in [yet another] court.'" *Robi*, 838 F.2d at 323 (quoting *Americana Fabrics, Inc.*, 754 F.2d at 1530). "[E]ven when we think that the most recent judgment might be wrong, we still give it *res judicata* effect so that finality is achieved and the parties are encouraged to appeal an inconsistent judgment directly rather than attack it collaterally before another court." *Id.  See Americana Fabrics, Inc.*, 754 F.2d at 1530 ("[t]he decision is not binding because it is correct; it is binding because it is last").  "[T]he later of the two inconsistent judgments is ordinarily held conclusive in a third action even when the earlier judgment was relied on in the second action and the court erroneously held that it was not conclusive."  Restatement (Second) of Judgments § 15, cmt. n (1982).

The last-in-time rule applies to both claim preclusion and issue preclusion. *See Americana Fabrics, Inc.*, 754 F.2d at 1530 (the prior "order has both a claim-preclusive and issue-preclusive effect on the action in the district court"); Restatement (Second) of Judgments § 15 cmt. c (1982) ("[t]he rule stated in this Section governs the effect of a judgment by way of merger, bar, or issue

16

1  preclusion").  The last-in-time rule applies regardless of the jurisdiction rendering

2  the judgment.  *See Americana Fabrics, Inc.*, 754 F.2d at 1530 n. 2 (last-in-time

3  rule applies to both federal and state judgments); *Koehler v. Bank of Bermuda Ltd.*,

4  2004 WL 444101, *18 (S.D.N.Y. Mar. 10, 2014) ("[t]he latest in time rule applies

5  to foreign judgments").  The last-in-time rule applies under both federal and

6  California *res judicata* law.  *See Americana Fabrics, Inc.*, 754 F.2d at 1530 n. 2

7  ("[w]e need not reach the issue of whether federal, California, or New York res

8  judicata rules apply to this case" because "[t]he 'last in time' rule is present in

9  California and New York law as well as in federal law").

10      Here, the last-in-time rule applies to preclude TPC from relitigating its claim

11  of forgery.  The most recent court to rule on the issue whether the 1976 Agreement

12  is a forgery – the Supreme People's Court of the People's Republic of China –

13  found that the 1976 Agreement was not forged, as did the immediately prior court

14  to consider that issue, the Tokyo District Court.  *See* RJN, Exs. B, H.  Either such

15  determination is sufficient to bar TPC from relitigating the issue of forgery before

16  this Court.

17      A rationale for affording preclusive effect to the last-in-time court's

18  judgment is that such court "could have or did consider the *res judicata* effect of

19  earlier cases."  *Robi*, 838 F.2d at 328 (citing *Americana Fabrics, Inc.*, 754 F.2d at

20  1530).  "[I]f one party could have raised *res judicata*, but did not, that litigant must

21  bear the cost of its tactic or inadvertence."  *Id.* at 322-23 (citing 18 C. Wright, A.

22  Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction*, § 4404, at 26-27

23  (1981)).

24      As the Chinese Supreme People's Court stated, the Chinese courts could

25  have considered the preclusive effect of the Japanese or Thai Judgments, had the

26  parties followed the law allowing them to apply to the intermediate court for

27  recognition of foreign judgments.  *See* RJN, Ex. H, at 7-9, 25 (discussing Civil

28  Procedure Law of the People's Republic of China, Arts. 281, 282 (2012), which

4837-6557-8033.v6

allow a party to directly apply to the intermediate people's court for recognition of a judgment, and authorize that court to recognize the validity of the judgment upon making certain findings).  However, no party requested recognition of any prior Judgment in the Chinese intermediate court.  Where *res judicata* is not properly presented to the last-in-time court, that court's judgment is nonetheless entitled to preclusive effect.  *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction.2d*, § 4404, at 62-63 (2002 & supp. 2015) (where a party has inadvertently or intentionally failed to present the issue of *res judicata* to a court, it is fair to preclude a third bite at the apple; "[a]lthough somewhat diluted, the values of repose also suggest that it is better to rest after the second judgment").

Furthermore, "the most recent court to decide the matter may have considered and rejected the operation of the prior judgment as *res judicata*, and *its* decision should be treated as *res judicata* on the preclusive effect of the prior judgment."  *Robi*, 838 F.2d at 323 (citing *Americana Fabrics, Inc.*, 754 F.2d at 1530).  Here, the Japanese courts did consider and reject the operation of foreign judgments as *res judicata*.  In its September 30, 2010 Judgment, the Tokyo District Court specifically considered the Judgments from the prior proceedings in Japan, Thailand, and China, and concluded that the December 10, 2003 Judgment of the Tokyo Appellate Court precluded TPC from relitigating the forgery claim.  *See* RJN, Ex. B.

The China Supreme Court's September 29, 2013 Civil Ruling is entitled to preclusive effect because it is the last-in-time judgment.  Accordingly, such Court's holding bars all of TPC's claims to the extent that they are predicated upon the contention that the 1976 Agreement is forged or unenforceable.  However, even if the Court were to decline to give preclusive effect to the Chinese Supreme People's Court's Judgment, the September 30, 2010 Judgment of the Tokyo District Court would bar all of TPC's claims based upon the alleged forgery or

18

1   unenforceability of the 1976 Agreement.  Thus, because the 2013 Judgment of the

2   Chinese Supreme People's Court and the 2010 Judgment of the Tokyo District

3   Court are subsequent in time to the 2007 Judgment of the Thai Supreme Court, the

4   Court may and should grant UMC's motion upon finding that preclusive effect

5   should be afforded to either or both of the former Judgments on the forgery issue.

6       **C.    <ins>Under the Doctrines of Claim and Issue Preclusion, the Chinese
7          and Japanese Judgments Bar TPC from Relitigating Its Claims
           that the 1976 Agreement is a Forgery or Invalid.</ins>**

8   There is a split in authority as to whether a federal court giving preclusive

9   effect to the judgment of a foreign court should apply the preclusion law of the

10  foreign jurisdiction or U.S. preclusion law.  *See, e.g.*, *Alfadda v. Fenn*, 966 F.

11  Supp. 1317, 1326-30 (S.D.N.Y. 1997) (summarizing split in law, then

12  "conclud[ing] that a federal court should normally apply either federal or state law,

13  depending on the nature of the claim, to determine the preclusive effect of a

14  foreign country judgment") (footnote omitted).  The Court need not resolve this

15  issue on this motion because under either foreign or U.S. law, either or both the

16  Judgments of the Chinese Supreme People's Court and the Tokyo District Court

17  would be given preclusive effect against TPC's allegations that the 1976

18  Agreement is forged or unenforceable.

19  Because the Chinese Supreme People's Court's opinion indicated that TPC

20  could have sought preclusive effect for the Thai Supreme Court's Judgment had it

21  applied to the intermediate court for recognition of that judgment, it follows that

22  the courts of China will give preclusive effect to judgments where a party has

23  followed the proper procedures for requesting such preclusive effect.  Because the

24  Tokyo District Court's September 30, 2010 Judgment afforded preclusive effect to

25  the Tokyo Appellate Court's December 10, 2003 Judgment (and specifically

26  declined to afford preclusive effect to the November 14, 2007 Judgment of the

27  Thai Supreme Court and the subsequently overruled October 23, 2009 Judgment of

28  the Guangzhou Intermediate People's Court because of the preclusive effect of the

Tokyo Appellate Court's December 10, 2003 Judgment), it follows that Japanese courts would afford preclusive effect to the September 30, 2010 Judgment of the Tokyo District Court.

If the Court were to apply U.S. law on *res judicata*, UMC would still prevail.  "According to the [Supreme] Court, '[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata."'"  *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).  "'[C]laim preclusion' is the doctrine providing that 'a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  *Id.* (quoting *Taylor*, 553 U.S. at 892).  "'Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'"  *Id.* at 926-27 (quoting *Taylor*, 553 U.S. at 892).  "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'"  *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

Under federal law, "[i]ssue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: [] (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; [] (2) the first proceeding ended with a final judgment on the merits; and [] (3) the party against whom [issue preclusion] is asserted was a party or in

4837-6557-8033.v6

privity with a party at the first proceeding."[10]  *In re Reynoso*, 477 F.3d 1117, 1122 (9th Cir. 2007) (citing *Reyn's Pasta Bella, LLC*, 442 F.3d at 746).

All three requirements are satisfied here with regard to both the 2013 Judgment of the Chinese Supreme People's Court and the 2010 Judgment of the Tokyo District Court.  First, the issues of alleged forgery and unenforceability asserted by TPC in this lawsuit are identical to the issues necessarily decided by both judgments.  Second, both proceedings ended with final judgments on the merits, with: (1) the Japanese Supreme Court having denied review on April 26, 2012 of TPC's appeal from the July 11, 2011 Judgment of the Japanese Intellectual Property High Court affirming the September 30, 2010 Judgment of the Tokyo District Court; and (2) the Chinese Supreme People's Court – the court of last resort – having ruled against TPC on this issue.  *See* RJN, Exs. B, D, F, H.  Third, TPC – the party against which issue preclusion is sought in this case – was a party to both proceedings.  *See id.*  The Court should therefore find that, under either federal or California law, the 2013 Judgment of the Chinese Supreme People's Court and/or the 2010 Judgment of the Tokyo District Court bar TPC, as a matter

---

[10] California's law of issue preclusion is largely the same.  Under California law, "the doctrine of issue preclusion 'precludes relitigation of issues argued and decided in prior proceedings,' when six criteria are met. . . .  These criteria are: (1) 'the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding'; (2) the issue to be precluded 'must have been actually litigated in the former proceeding'; (3) the issue to be precluded 'must have been necessarily decided in the former proceeding'; (4) 'the decision in the former proceeding must be final and on the merits'; (5) 'the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding'; and (6) application of issue preclusion must be consistent with the public policies of 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.'"  *White*, 671 F.3d at 927 (quoting *Lucido v. Superior Court*, 51 Cal. 3d 335, 341-43 (1990)).  The elements set forth in this six-factor state law test are the same as those set forth in the three-factor federal law test, except for the requirement that the issue to be precluded must have been actually litigated (and not just necessarily decided) in the prior litigation.  Because the issues of alleged forgery and unenforceability of the 1976 Agreement were addressed at length in the September 29, 2013 Judgment of the Chinese Supreme People's Court and the September 30, 2010 Judgment of the Tokyo District Court, those issues were actually litigated in the proceedings in China and Japan.

4837-6557-8033.v6

of issue preclusion, from relitigating its claims that the 1976 Agreement was forged.

TPC's Eleventh Affirmative Defense does not allege the legal or factual basis for TPC's contention that the 1976 Agreement is invalid under Japanese law. However, because TPC has already litigated (and lost) the issue of validity of the 1976 Agreement, issue preclusion bars it from challenging the validity of that Agreement even if the challenge is based on a somewhat different theory.[11] *See Kamilche Co. v. United States*, 53 F.3d 1059, 1062-63 (9th Cir. 1995) (rejecting United States' argument that it was not collaterally estopped from litigating issue of adverse possession to prove land ownership because in the prior lawsuit it had relied on land title – not adverse possession – to prove ownership; "'once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case'") (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)), *amended*, 75 F.3d 1391 (9th Cir. 1996); *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1123-27 (C.D. Cal. 2005) (defendant who unsuccessfully brought claim of patent invalidity in first lawsuit based on certain grounds was precluded from relying on other grounds for invalidity in second lawsuit); Restatement (Second) of Judgments § 27, cmt. c (1982) ("if the party against whom preclusion is sought did in fact litigate an issue . . . and suffered an adverse determination, . . . new arguments may not be presented to obtain a different determination of that issue").

### D.   The Thai Judgment is Not Entitled to Preclusive Effect.

As discussed above, because the Chinese and Japanese Judgments postdated the Thai Supreme Court's November 14, 2007 Judgment, under the last-in-time

---

[11] To the extent TPC's affirmative defense is based upon the alleged termination of the 1976 Agreement after the time of the Chinese and Japanese Judgments, that defense would not be precluded.  As discussed below, UMC seeks summary judgment against TPC's claim that it has terminated the 1976 Agreement.

22

rule the latter Judgment is not entitled to preclusive effect.  UMC notes that a former president of TPC, Hideaki Tsuburaya, submitted a statement dated February 26, 2013 in a court in China in which he stated his belief that the Thai Supreme Court's 2007 Judgment was procured through bribery on behalf of TPC. *See* Wexler Decl., Exs. E, F.  If the Court were to credit Mr. Tsuburaya's testimony, no preclusive effect could be given to the Thai Supreme Court's 2007 Judgment.  *See* Restatement (Third) of Foreign Relations Law § 482, cmt. e (1987) (foreign judgment is not enforceable where there has been "fraudulent action by the prevailing party that deprived the losing party of adequate opportunity to present its case to the court").  While UMC does not ask the Court to grant it judgment on the pleadings or summary judgment based upon Mr. Tsuburaya's testimony, it is providing the Court with this evidence to explain why the Court should not grant summary judgment *sua sponte* against UMC if it were to conclude that the Chinese Supreme Court's September 29, 2013 Judgment and the Tokyo District Court's September 30, 2010 Judgment are not entitled to preclusive effect but that the Thai Supreme Court's November 14, 2007 appears on its face to be entitled to preclusive effect.

## II.    TPC HAS NO RIGHT TO TERMINATE THE 1976 AGREEMENT.

In its July 10, 2014 letter to Mr. Perasit, TPC purported to terminate the 1976 Agreement pursuant to Article 597, Section 3 of the Civil Code of Japan (and if there is any compensation for the rights, pursuant to Article 617, Section 1 of that Code).  *See* Wexler Decl., Ex. C.  On their face, however, neither provision applies to the 1976 Agreement, a contract that transfers intellectual property rights.

First, Article 597, Section 3 applies to demands for the return of "borrowed Things."  *See* Civil Code of Japan, Article 597 (Timing of Return of Borrowed Things), Section 3 ("[i]f the parties have not specified the timing of the return and the purposes of the using and taking profits, the lender may demand the return of the ***borrowed Things*** at any time") (emphasis added).  Because the term "Things"

23

refers to "tangible thing[s]," *see* Civil Code of Japan, Article 85, Article 597 has no applicability to assignments of or licenses for intellectual property, an intangible asset.  Furthermore, Article 597 is part of Part III (Claims), Chapter 2 (Contracts), Section 6 (Loans for Use).  Section 6 applies only when a party has gratuitously received a "Thing" from the other party.  *See* Civil Code of Japan, Article 593 ("[a] loan for use shall become effective when one of the parties receives a defined Thing from the other party by promising that he/she will return the Thing after he/she has ***gratuitously*** made use of and taken the profits of the same") (emphasis added).  In the September 30, 2010 Judgment, the Tokyo District Court held that the 1976 Agreement "was written to replace [TPC's] debt by granting the exclusive exploitation rights to [Mr. Sompote]."  RJN, Ex. B, at 44.  Issue preclusion bars TPC from contending that the 1976 Agreement was gratuitous.

Second, Article 617, Section 1 applies to the termination of leases.  *See* Civil Code of Japan, Article 617, Section 1.  Article 617 is part of Part III (Claims), Section 7 (Leases).  Under Section 7, a "lease" requires a "Thing."  *See* Civil Code of Japan, Article 601 ("[a] lease shall become effective when one of the parties promises to make a certain ***Thing*** available for the using and taking of the profits by the other party and the other party promises to pay rent for the same") (emphasis added).  As stated above, the term "Thing" refers to a tangible thing. *See* Civil Code of Japan, Article 85.  Furthermore, Article 617, Section 1 makes it clear that the provision applies to leases of land and other tangible property, not to assignments of or licenses for intellectual property, by referring solely to real property and other tangible things in stating when terminated leases expire.[12]

---

[12] *See* Article 617 (Offers to Terminate Leases with Indefinite Terms), Section 1 ("[i]f the parties do not specify the term of a lease, either party may request to terminate it at any time.  In such cases, the leases listed in the following items shall terminate on the expiration of the respective periods from the day of the request to terminate prescribed respectively in those items: (i) [l]eases of land: one year; (ii) [l]eases of buildings: three months; and (iii) [l]eases of movables and seating hire facilities: one day").

24

1   Article 540, Section 1 of the Civil Code of Japan, the general statutory

2   provision governing the cancellation of contracts, authorizes cancellation only

3   where the party has a contractual or independent legal right to cancel the contract.

4   *See id.* ("*[i]f one of the parties has a right to cancel in accordance with the*

5   *provisions of the contract or law*, the cancellation shall be effected by

6   manifestation of intention to the other party") (emphasis added).  Here, there is

7   nothing in the 1976 Agreement that conveys any right of termination, and TPC has

8   not identified (and cannot identify) any independent legal ground allowing it to

9   unilaterally terminate the 1976 Agreement.  Accordingly, UMC is entitled to

10   summary judgment against TPC's claim that it has terminated that Agreement.

## CONCLUSION

12   UMC respectfully asks the Court: (1) to hold that the 2013 Judgment of the

13   Chinese Supreme People's Court and the 2010 Judgment of the Tokyo District

14   Court preclude TPC from relitigating its contention that the 1976 Agreement is a

15   forgery or unenforceable; (2) to hold that TPC's July 10, 2014 letters were

16   ineffective to terminate the 1976 Agreement; and (3) to dismiss TPC's Third,

17   Tenth, and Eleventh Affirmative Defense and its First and Second Counterclaims

18   to the extent that they are predicated upon the contentions that the 1976 Agreement

19   (a) is a forgery or unenforceable or (b) has been terminated.

20   Dated:  July 25, 2016

RICHARD H. ZAITLEN
MICHAEL CHIBIB, P.C.
JEFFREY D. WEXLER
LORI LEVINE
PILLSBURY WINTHROP SHAW
PITTMAN LLP


By:  */s/ Jeffrey D. Wexler*

Jeffrey D. Wexler
Attorneys for Plaintiff and Counterdefendant
UM CORPORATION and
Counterdefendants GOLDEN MEDIA
GROUP, INC. and TIGA
ENTERTAINMENT COMPANY, LTD.

4837-6557-8033.v6